**WASHINGTON GAS LIGHT COMPANY, Potomac Electric Power Company, Chesapeake & Potomac Telephone Company, Petitioners,**

v.

**PUBLIC SERVICE COMMISSION of the DISTRICT OF COLUMBIA, Respondent.**

**Office of People's Counsel, Intervenor.**

**Nos. 82–111, 82–113 and 82–126.**

District of Columbia Court of Appeals.

Argued May 20, 1982.

Decided Oct. 4, 1982.

---

Gordon M. Grant, Washington, D.C., with whom Lewis Carroll and Ralph E. Fisher, Washington, D.C., were on the briefs, for Washington Gas Light Co.

William Dana Shapiro, Washington, D.C., with whom Edward A. Caine and Altomease R. Kennedy, Washington, D.C., were on the briefs, for Potomac Elec. Power Co.

Lee A. Satterfield, Washington, D.C., with whom Michael J. Morrissey, Robert A. Leveton and Mark J. Mathis, Washington, D.C., were on the brief, for Chesapeake and Potomac Telephone Co.

Joseph H. Sharlitt, Washington, D.C., with whom Brian Lederer, Elizabeth Noel, Harvey A. Levin and Harley Daniels, Washington, D.C., were on the brief, for Office of People's Counsel.

Lloyd N. Moore, Jr., Washington, D.C., with whom Michael deHaven Newsom, Warner Lawson, Jr., and Michael E. Geltner, Washington, D.C., were on the briefs, for Public Service Commission of the District of Columbia.

Before KELLY, KERN and BELSON, Associate Judges.

KERN, Associate Judge:

This is the third case to reach this court seeking review of a District of Columbia Public Service Commission ("Commission" or "PSC") decision interpreting D.C.Code 1981, § 43–612(a). That section provides that various expenses of the Commission and of the Office of People's Counsel ("OPC") shall be borne by the regulated public utilities. The expenses of a proceeding are assessed directly against the utility involved in that proceeding as a special franchise tax. In the two appeals preceding this one, we faced questions regarding the kinds of OPC expenses that are assessable and the extent of the Commission's review of these expenses.[1] Now we must examine § 43–612(a)'s express limitations on the amount of assessments.

Section 612(a) provides the following:

[T]he amount expended by the Commission and the People's Counsel, combined in any valuation or rate case shall not exceed one-half of 1 per centum of the existing valuation of the company investigated, and . . . the amount expended in all other investigations shall not exceed one-tenth of 1 per centum of the existing valuation for any 1 company for any 1 year.

Because of the ambiguity of several terms in this provision of § 612(a), the Commission initiated Formal Case No. 774 to interpret it.[2] OPC and the affected public utilities, Washington Gas Light ("WGL"), Potomac Electric Power Company ("Pepco") and the Chesapeake & Potomac Telephone Company ("C & P") filed briefs regarding their

1. See Washington Gas Light Co. v. Public Service Commission of the District of Columbia, D.C.App. (Nos. 81–302, –303 and –305 [decided this date]); Potomac Electric Power Co. v. Public Service Commission, D.C.App., 455 A.2d 384 [decided this date].

2. The Commission's investigation was prompted by Pepco's objection to an OPC request for issuance of a trust fund deposit order in Formal Case No. 758. Pepco argued that payment of the $600,000 requested would exceed the statutory limit on assessments imposed by D.C.Code 1981, § 43–612(a).

positions on several questions.[3] The Commission's conclusion on two points, the meaning of the term "valuation" and that of "rate case," is the subject of this appeal.

The issues before us are solely questions of law. OPC argues that we should accord the Commission's interpretation great deference, while the utilities contend that our scope of review is unlimited. The United States Supreme Court has clarified the type of review that a court must apply to an agency's interpretation of the statute that it administers. In *Zuber v. Allen,* 396 U.S. 168, 192–93, 90 S.Ct. 314, 327–328, 24 L.Ed.2d 345 (1969), the Court explained that the reviewing court should resolve any *ambiguities* in favor of administrative construction, but only if such construction enhances the general purposes and policies underlying the statute. It is the ultimate responsibility of the reviewing court to construe language employed by Congress. *Id.* Because we find that the Commission has construed the terms "valuation" and "rate case" contrary to the plain meaning of the statute and Congress' intention, we reverse.

I. Meaning of the Term "Valuation"

One question that the Commission confronted in Formal Case No. 774 was whether, for purposes of determining the assessment limitation under § 43–612(a), the term "valuation" refers to use of a system-wide or a jurisdictional valuation. In Order No. 7430 the Commission ruled that "valuation" refers to system-wide rate base. In so ruling, it relied primarily on a portion of the legislative history of the 1975 amendments to § 43–612, which dealt with the

addition of OPC's expenses to the assessment procedure. Petitioners WGL and Pepco contend that the proper interpretation is that the term refers to jurisdictional valuation.

■ It is appropriate to an analysis of this issue to begin with the language of the public utilities statute. As the Commission pointed out in its order, there is no reference in § 43–612(a) to any limitation on "existing valuation" for purposes of determining the ceiling of assessments. The Commission concedes, however, that "existing valuation" means the value or number arrived at in a valuation proceeding pursuant to D.C.Code 1981, § 43–506. That section provides the following:

The Commission shall value the property of every public utility within the District of Columbia actually used and useful for the convenience of the public at the fair value thereof at the time of said valuation.

We agree with the Commission that the only reasonable construction of this language is that the property to be valued is "property actually used and useful for the convenience of the public of the District of Columbia." (PSC brief at 23.) In our view, the conclusion naturally follows from this language that the term "valuation" refers to a jurisdictional, not a system-wide, valuation. The utilities do not contend that only that property physically located in the District is to be valued; a jurisdictional valuation encompasses property located outside District boundaries which serves D.C. customers.[4]

---

3. The four questions addressed in Formal Case No. 774 were the following:

(1) For purposes of determining the assessment limitations under § 43–612(a), does the term "valuation" mean rate base (original cost basis), rate base (fair value basis), total capitalization, or some other measure?

(2) For purposes of determining the assessment limitations under § 43–612(a), does the term valuation mean the use of a system-wide or jurisdictional valuation?

(3) For purposes of determining whether a particular proceeding is subject to the one-half of 1 per centum or the one-tenth of 1 per

centum assessment limitation under § 43–612(a), what do the terms "valuation," "rate case," and "all other investigation" mean? (4) Does the one-tenth of 1 per centum limitation that applies to "all other investigations" apply to each such proceeding or to all such proceedings collectively?

The Commission's answer to questions one and four are not on review in this appeal.

4. Thus we find irrelevant the Commission's argument regarding the phrase "within the District of Columbia" in § 43–506. Even if this phrase does modify "public utilities," the section read as a whole leads us to conclude that it

An examination of the existing practices of the Commission confirms the conclusion that "valuation" does not refer to a system-wide computation. The current Commission practice is to determine valuation in a rate case, rather than conduct a separate valuation proceedings pursuant to § 43–506. Thus, in Order No. 7430, the Commission states that "in light of present practice, 'valuation' would be determined for any utility by examining the most recent statement by this Commission of that utility's rate base." The utilities point out that the most current valuations of their property undertaken prior to Formal Case No. 774 were jurisdictional valuations. The most recent statement of Pepco's and WGL's rate bases were arrived at in proceedings in which no system-wide valuations were undertaken.[5] Instead, the Commission valued only that property used and useful for District of Columbia customers.

It is true, as the Commission argues, that the Commission is free to use any method of valuation in ratemaking proceedings so long as the end result of the rate order is just and reasonable; the Code sections pertaining to valuation proceedings are not binding upon the Commission in rate proceedings. *See Washington Gas Light Co. v. Baker,* 88 U.S.App.D.C. 115, 121–22, 188 F.2d 11, 17–18 (1950), *cert. denied,* 340 U.S. 952, 71 S.Ct. 571, 95 L.Ed. 686 (1951). The fact remains, nonetheless, that the Commission is currently determining "valuation" in

ratemaking proceedings in lieu of separate § 508 valuation proceedings and that this valuation is on a jurisdictional rather than system-wide basis. Moreover, we agree with the utilities that it would not make economic sense for the Commission to conduct a separate system-wide valuation of each utility for the *sole* purpose of fixing the assessment limitations.

The Commission relies on the Senate Report concerning the 1975 amendment which created the OPC and provided that the assessment procedure be applied to OPC expenses also. In discussing the impact of the assessment limitations, Senate Report No. 93–1349 stated the following:

> The Committee wishes to stress that these amounts are well within the present statutory limitation for such assessments (the limitation is equal to ½ of 1% of the value of the company involved, in rate and valuation proceedings; for an electric company case the limitation would equal $6 million). [S. REP. No. 93–1349, 93d Cong., 2d Sess. 9 (1974). App. at 96.]

The Commission argues that the figure of $6 million was derived from a calculation based on the value of Pepco's net utility plant, rather than a jurisdictional value.[6] This incidental reference in the legislative history does not persuade us that our interpretation of the term "existing valuation" is not the proper one. Moreover, if we found it necessary to examine legislative history, that of the original enactment,

is property useful for the public of the District, not the public of other jurisdictions, that is to be valued. In light of our interpretation of § 43–506, we also find irrelevant OPC's argument that the statute's definitions of "electric plant," "water-power company," and various other terms are not limited to jurisdictional property. *See* D.C.Code 1981, §§ 43–212, –214, –218.

5. WGL's most recent determination of jurisdictional rate base was made by the Commission in Formal Case No. 768, PSC Order No. 7469 (Feb. 9, 1982), while that of Pepco was made in Formal Case No. 748, PSC Order No. 7457 (Dec. 30, 1981). The most current valuation of Pepco's rate base prior to Formal Case No. 774 was reached in Formal Case No. 715, PSC Order No. 7135 (May 15, 1980).

6. Specifically, the Commission stated:

> The committee must have derived the $6 million figure from the line item "Net Utility Plant—1973" from a PEPCO report. That item, $1,294,885,000, when multiplied by .005 (½ of 1%) equals $6,474,425, a number somewhat larger than, but in the same general range of $6 million. There is no indication whatsoever that "Net Utility Plant—1973" represents only D.C. jurisdictional plant. Furthermore, the figure contained in the report should be contrasted with the number PEPCO now offers up—$4,059,900—or the statutory limit. The latter number represents, of course, the product of .005 and jurisdictional rate base. [Order No. 7430 at 5. Record at 140.]

rather than the 1975 amendments, would be the more relevant inquiry. The arguments of OPC based on this earlier history [7] do not persuade us to alter the conclusion required by the plain statutory language and the existing practices of the Commission—that the "existing valuation" by which the millage limitation is measured refers to a *jurisdictional* valuation.[8]

## II. Meaning of the Term "Rate Case"

In Formal Case No. 774 the Commission also considered the following question:

> For purposes of determining whether a particular proceeding is subject to the one-half of 1 per centum assessment limitation under § 43–[6]12(a), what do the terms "valuation," "rate case," and "all other investigations" mean?

The Commission concluded in Order No. 7430 that the term "rate case" refers to proceedings in which all or some of the rates of a utility are set, proceedings in which a method for determining rates is set, and those cases in which the nexus between that proceeding and ratemaking or ratemaking methodology is so close that, as a matter of regulatory policy, the Commission elects to treat them as a rate case.

■ Petitioners Pepco and C & P challenge this determination. Both utility companies claim that the Commission's definition of rate case is too broad, and C & P

asserts more specifically that "rate case" refers only to a general rate case, a proceeding in which all of the rates of the utility involved are at issue. Our review of the language of § 43–612, the statute as a whole, and the relevant legislative history convince us that "rate case" within the context of this limitation refers to general and specific rate cases, *i.e.,* those proceedings in which all or some of the rates of a utility are set.

Section 43–612's provision which places limitations on assessments distinguishes between valuation and rate cases, which are subject to a maximum amount of one-half of 1 per centum of the utility's existing valuation per proceeding, and all other investigations, which are subject to a limitation of one-tenth of 1 per centum. It is undisputed that the term "valuation case" has a specific definition. In Order No. 7430, the Commission determined that "valuation" refers to a proceeding to ascertain the value of a utility's property pursuant to D.C.Code 1981, §§ 43–505, –508.[9] Other sections of the public utilities statute also suggest a specific definition of the term "rate case." Section 43–601(c) provides that utilities must apply to the Commission in order to advance or discontinue its current rates. Section 43–608 authorizes the Commission, on its own initiative or pursuant to a complaint, to investigate rates,

---

**7.** In 1913 Congress enacted the Public Utilities Commission Act, which included the original version of D.C.Code 1981, § 43–506, and in 1927, § 43–612(a) was enacted. Hence the term "valuation" was in effect and had acquired a meaning prior to the assessment statute. OPC argues extensively that in 1913 and 1927 Congress intended valuation to mean system-wide valuation because the practice of the Commission from 1914 through 1970 was to establish rates on an area-wide basis. We reiterate that it is the valuation arrived at in a valuation proceeding pursuant to § 43–506, not necessarily that employed in a rate proceeding, that governs the assessment limitation, and we note that the first valuation proceeding held with respect to Pepco after the creation of the Public Utilities Commission in 1913 established a valuation based upon Pepco's jurisdictional property. *See Re Potomac Electric Power Company*, P.U.R. 1917D 563, 702–03 (D.C.P. U.C. May 2, 1917). Even if valuation proceed-

ings at certain points in the history of the Public Service Commission did result in system-wide valuation, this does not alter our conclusion.

**8.** Petitioners Pepco and WGL also contend that an assessment limited by reference to the valuation of nonjurisdictional property would be unconstitutional because this assessment is in the nature of a state franchise tax. Because we reverse the Commission's ruling regarding the meaning of "valuation" on statutory grounds, we find it unnecessary to address this argument.

**9.** In addition to this definition of valuation cases, the Commission determined in Order No. 7430 that "all other investigations" refers to proceedings that are not rate or valuation cases. None of the parties herein question these determinations.

while § 43–611 grants the Commission the power to determine and by order fix rates. Orders affecting rates, pursuant to applications by utilities, complaints, or investigations by the Commission, may only be entered following a formal hearing. D.C.Code 1981, §§ 43–608, –601(d). We believe that a logical and sound interpretation of the term "rate case" is clear from a reading of these sections dealing with rates; "rate case" refers to a proceeding, including a formal hearing, which results in a Commission order fixing any of the rates of a utility.[10]

There is no support in the statute or in common usage that the term "rate case" is so broad as to encompass adjudicatory or rulemaking proceedings dealing with ratemaking methodology or other proceedings which have some nexus to the setting of utility rates. In addition, the Commission's conclusion that rate case may refer to proceedings which may have an incidental or indirect effect on rates does not follow logically from a reasonable construction of the language of § 43–612. The limitation provision distinguishes between valuation and rate cases. Although it is true that the valuation reached in valuation proceedings need not be determinative in a rate proceeding,[11] this valuation has frequently been used in rate determinations. In fact, such valuation is currently used in determining rates and such was the apparent practice at the time the assessment statute with the limitation provision was enacted.[12] Thus it is clear that valuation proceedings themselves are likely to have a significant effect on ratemaking. Yet Congress chose to create limitations for valuation and rate cases. If it intended the term "rate case" to apply to proceedings which have an effect on rates, it is unlikely that this redundant distinction would have been made.

The legislative history of the assessment statute supports our interpretation of rate

---

**10.** Contrary to the argument of C & P, we do not find support within the statute for a definition limiting the term "rate case" to those proceedings in which all rates of a utility are determined. The statute provides that the Commission in its discretion may conduct separate hearings when complaints are made of more than one rate. D.C.Code 1981, § 43–614. Despite any accepted regulatory parlance which may usually employ the term "rate case" to refer to the general rate case, the statute does not indicate that a separate hearing on less than all the rates of a utility is not a rate case within the meaning of the assessment limitation provision.

**11.** In *Potomac Electric Power Co. v. Public Utilities Commission,* 81 U.S.App.D.C. 225, 229, 158 F.2d 521, 525 (1946), *cert. denied,* 331 U.S. 816, 67 S.Ct. 1303, 91 L.Ed. 1834 (1947), the D.C. Circuit examined the public utilities statute and concluded:

The act does not condition rate-making upon valuation. Though Congress required that a valuation be made, it may have done so either for possible use in legislation or for such use, if any, as the Commission might see fit to make of it, in regulating either rates or security issues.

*See also Washington Gas Light Co. v. Baker, supra.*

**12.** The Senate Report dealing with this bill, in discussing the need for an assessment procedure to cover the expenses of valuation proceedings, stated the following:

In 1917 and 1919, as the result of prior appropriations of $156,000 by Congress, the Public Utilities Commission made valuations of public utilities operating in the District of Columbia. These were contested by some of the companies in the courts, with the result that quite recently the valuations involved were decreed incorrect in one respect, and will have to be revised to be of use as a *basis for the determination of reasonable rates* to be charged the public, yielding a fair return to the companies. Several months ago the gas companies applied to the Public Utilities Commission for a revaluation of their properties, and in hearings before your committee the representative of those companies stated that a valuation of at least 33 per cent in excess of the previous valuation by the Public Utilities Commission is deemed proper by the companies. The gas companies during the past year have expended $100,000 in a valuation conducted under their own direction, indicating an intention to request an increase of rates based upon an enhanced value of property. *The cost of the companies' own valuations,* of course, is borne by the consumers of gas, *through the rates that are paid for gas, and the evident purpose of the valuations is to charge the public still more.* [S. Rep. No. 644, 69th Cong., 1st Sess. 2 (1926). App. at 75 (emphasis supplied).]

case. The Senate report which discusses § 43–612 heavily emphasizes the expenses of valuation proceedings and the need for an assessment procedure to provide for these expenses and only alludes to the expenses of rate proceedings. Indicative of the meaning of rate case is the following passage:

The Commission has available only about $150 with which to conduct its valuation of properties worth many millions of dollars and involving extremely intricate legal, engineering and accounting problems. To expect or require Congress to appropriate specifically each time that a public utility company makes application for *revaluation or increase of rates* in order to cover the cost of the Commission's special investigation would involve delays injurious alike to the public interest and the interest of the public utilities companies involved. The bill reported, therefore, simply provides that *under proper restrictions* and regulations the companies shall pay the cost of the investigations or valuations made by the commission, charging back finally to the consumers whose interests are involved the expense incurred. [S. Rep. No. 644, 69th Cong., 1st Sess. 2 (1926). App. at 75 (emphasis supplied).]

It was in this report that the Senate recommended amending the proposed section by adding the limitation provision. The above language indicates that there was deemed to be a need for a higher limitation on assessments for two types of proceedings—valuations and cases in which rates are actually determined.

Arguments of the Commission and OPC in favor of the Commission's broad interpretation of rate case focus primarily on the Commission's discretion to determine matters relating to ratemaking. It is true, of course, that the Commission has broad discretion in these areas. However, these arguments ignore the fact that what is at issue here is an explicit *limitation* on amounts that may be assessed against utilities. As the Senate report offering this provision stated:

The purpose of a committee's amendment is *to limit* the expense to a maximum of one-half of 1 per cent of the existing valuation of the utility in case of valuation or rate proceedings, and to a maximum of one-tenth of 1 per cent for all other investigations in the course of any one year. This is a *limitation upon the Public Utility Commission* and not upon the companies. [*Id.* at 1. App. at 74 (emphasis supplied).]

The report also refers to "proper restrictions" under which the assessment procedure must operate. *Id.* at 2. App. at 75. It is clear that Congress intended that the otherwise broad discretion of the Commission is not to go unchecked.

We conclude that Congress did not intend that the definition of the term "rate case" be within the Public Service Commission's discretion. Such discretion would render illusory the precise limitation set for assessments for "all other investigations" undertaken by the Commission. Instead, a proper construction of § 43–612 within the context of the public utilities statute reveals that "rate case" refers to general and special rate cases. Thus, we reverse the Commission's expansive determination of that term's definition.

Accordingly, it is ordered that the PSC orders in Formal Case No. 774 be vacated with respect to the definition of the terms "valuation" and "rate case." We hereby direct that the Commission enter a new order defining these two terms in accordance with this opinion.

*So ordered.*