POTOMAC ELECTRIC POWER CO., et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA GOVERNMENT, et al., Defendants.

Civ. A. No. 85–4101.

United States District Court, District of Columbia.

Dec. 24, 1986.

William Dana Shapiro, Potomac Elec. Power Co., Washington, D.C., for plaintiffs.

Cary D. Pollack, Washington, D.C., for defendants.

Frank H. Strickler, Washington, D.C., for intervenor, D.C. Natural Gas, a div. of Wash. Gas & Light Co.

Lee A. Satterfield, James G. Pachulski, Washington, D.C., for intervenor, Chesapeake & Potomac Telephone Co.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This case concerns the scope of power of the Office of the People's Counsel ("OPC"), the consumer's advocate before the District of Columbia's Public Service Commission ("PSC"). Three utility companies bring this action to contest the process of enactment as well as the substantive content of a District of Columbia statute known as the "Utility Regulatory Assessment and Clarification Act of 1984" ("the Act"). Specifically, they allege that the Act's providing further definition of the powers of the Office of the People's Counsel amounted to an amendment of the District of Columbia charter and thus that the Act could not be enacted without passing through certain statutorily mandated charter amendment procedures. Plaintiffs also argue that the specific changes in the OPC resulting from the Act deprive them of their constitutionally protected right to due process. Because I find that the District of Columbia Council acted within its power in enacting this statute and because the statute in no way deprives plaintiffs of any constitutional rights, the defendant's motion to dismiss this case is granted.

## I. BACKGROUND

The OPC was first created in 1926 as a publicly funded consumer advocate; although abolished in 196?, it was re-established by Congress in 1975 and "charged with representing the interests of District of Columbia residents who use the services of utilities regulated by the PSC." *Office of People's Counsel v. Public Service Commission*, 477 A.2d 1079, 1094 (D.C. App.1984).

The amount of power vested in the OPC, and particularly the degree of independence the OPC maintains from the PSC, has been an area of contention in the regulatory community for years. *See, e.g., Potomac Electric Power Co. v. Pub. Serv. Com'n.*, 455 A.2d 374 (D.C.App.1982); *Washington Gas Light Co. v. Pub.Serv. Com'n.*, 455 A.2d 384 (D.C.App.1982). This battle came to a head more than two years ago when the District of Columbia Court of Appeals held:

that D.C. Code § 43–612(a) (1981) does not provide the Commission with authority to assess the utilities for (a) the fees

of private attorneys engaged by the OPC to conduct the OPC's legal business before the PSC and the courts, and (b) certain extraordinary episodic operating expenses incurred by the OPC in connection with particular proceedings not provided for in the normal appropriations process.

*Office of People's Counsel,* 477 A.2d at 1080–81. Thus, the Court concluded that "[t]o the extent that the proposed [PSC] rules would permit such assessments, they would be *ultra vires* of PSC's authority." *Id.* at 1081.

The Court's decision created what the Mayor characterized as a "crisis in the area of public utility regulation." Letter from Marion Barry, Jr., Mayor to David A. Clarke, Chairman Council of the District of Columbia (April 19, 1984) (District of Columbia Natural Gas' Memoranda in Opposition to Defendant's Motion to Dismiss, at Appendix A). The Mayor feared that the decision might "eliminate effective consumer representation, lead to inordinate or other inappropriate changes in utility rates and service, and disrupt the regulatory process to the detriment of ratepayers, consumers and the utility companies." *Id.* Acting to avert such a crisis, the Mayor submitted a draft emergency bill to the

Council one week after the Court's decision.

Ultimately entitled the "Utility Regulatory Assessment Clarification Act of 1984," and commonly referred to as District of Columbia Law 5–153,[1] the Act makes it clear that the OPC has independent authority (1) to investigate public utilities outside the scope of PSC proceedings, § 2(b) amending D.C.Code § 43–406; (2) to compel public utilities to produce certain information and documents, § 3(b) amending D.C.Code § 43–518; and (3) to assess public utilities for its own expenses, § 3(e) amending D.C.Code § 43–612.[2]

The Act was essentially an effort to clarify the existing statute and did not dramatically expand the power of the OPC.[3] Thus the Mayor anticipated that the Act would "call to a halt the endless and expensive litigation spanning a period of approximately seven (7) years by the public utilities in order to challenge the use of the Commission's § 43–612 authority to require payment of the expenses of litigation on behalf of the Office," *id.* It did not. Plaintiffs initiated this action challenging both the process of enactment and content of the clarification Act.[4] Following an extensive unsuccessful settlement attempt by the Court and parties,[5] the case is before the Court on defendant's motion to dismiss.

1. The Act is now codified at D.C.Code § 43–406 *et seq.*

2. While the Act was multi-faceted, this decision considers only these three provisions challenged by the plaintiffs. *See* Plaintiff's Statement of Points and Authorities in Opposition to Defendant's Motion to Dismiss at 14–28.

3. Specifically, the three provisions of the Act the plaintiffs challenge confer little new authority to the OPC. *First,* the OPC always had the ability to investigate utilities independently, although D.C.Code § 43–612(a) had been interpreted to prohibit the OPC from charging the utilities for these independent investigations. *See Washington Gas Light Co. v. Public Service Commission,* Nos. 81–302, –303, –305 (Oct. 4, 1982) *reprinted* at 477 A.2d 1093 (1982). *Second,* the OPC always had the ability, albeit indirect, to get documents, as the PSC was statutorily empowered to compel such production. D.C. Code § 43–518 (1981 Ed.). *Third,* the utilities were always required to pay assessments for certain expenses of the OPC; under the old law,

D.C.Code § 43–612(a) (1981 Ed.), these OPC assessments were broadly controlled by the PSC. Though the new Act rearranges the initial assessment duties between the OPC and the PSC, the PSC remains the only body able to call upon the utilities to deposit funds. D.C.Code § 43–612(a)(2) (1985 Ed.).

4. Plaintiff Potomac Electric Power Company ("PEPCO") brought this action on December 31, 1985. Plaintiffs District of Columbia Natural Gas and Chesapeake and Potomac Telephone Company were permitted to intervene by the Court on April 17, 1986.

5. During the course of this litigation there transpired a number of settlement discussions. The purpose of these discussions was to produce a document which would contain representations by the OPC as to procedures they intended to follow in implementing the Act. I feel compelled to commend the efforts of plaintiffs' counsel in doing everything they could to work out an appropriate accomodation.

## II. JURISDICTION

While the Court's jurisdiction is founded upon the federal question raised by the plaintiffs' attack on the substance of D.C.Law 5–153, 28 U.S.C. § 1331, the issue of the statutory legality of its enactment is before the Court under pendant jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Tuck v. Pan American Health Organization*, 668 F.2d 547, 549 (D.C.Cir. 1981).

## III. ENACTMENT PROCEDURE

The District of Columbia Council has legislative authority in the District of Columbia pursuant to the District of Columbia Self-Government and Governmental Reorganization Act, Public Law 93–198, 87 Stat. 774 ("Home Rule Act"), codified at D.C. Code § 1–201 *et seq.* The authority to legislate on local matters is limited by a provision that a Council action cannot "amend" the charter of the District of Columbia, Title IV of the Home Rule Act, without such an amendment being ratified by a majority of registered voters by referendum.[6] D.C.Code § 1–205(a). The question presented by this action is thus whether D.C.Law 5–153 amounted to a charter amendment and therefore should have been presented to the registered voters of the District as a referendum.

Though the District Charter does establish—in very general terms—the PSC, it is important to note that the Act in question here does not directly change a single word

in a single section of the District's Charter. Rather, plaintiffs contend that the Act has indirectly amended the charter by "limiting and altering the Public Service Commission's organization, structure and authority to regulate Plaintiff's rates and services in the overall public interest." Complaint at ¶ 25(a). To support this contention, plaintiffs charge that the Act "has so diminished the power and authority and functioning of the Public Service Commission, that the Commission's ability to carry out its basic responsibility has been dramatically altered." Plaintiff's Statement of Points and Authorities in Opposition to Defendant's Motion to Dismiss, at 33.

■ D.C.Law 5–153 is not a charter amendment. *First*, the Act does not directly change the charter at all. *Second*, whatever indirect effect the Act may have on the PSC certainly does not rise to the level of a charter amendment. The District of Columbia *Charter* contains those portions of the Home Rule Act which deal with the structure of government—the establishment of a legislative, executive, and judicial branch of government, etc. Charter amendments therefore refer to actions which, like state constitutional amendments, fundamentally change the nature of the system of government. D.C.Law 5–153 does not begin to approach this type of governmental reorganization. Though the Act does involve some changes concerning the structure of the Public Service Commission, these changes do not in any significant way alter the structure or manner in

Initially, the OPC and its counsel also attempted to try to work diligently to meet the objective of the discussions. Shortly after the parties had appeared to agree on the wording of—and were about to sign—a document, the defendants abruptly withdrew from discussions claiming that they could not get the agreement of their supervisors. I would have hoped that this information could have been conveyed to the plaintiff's counsel and the Court at an earlier time.

Even though there was no settlement, and the guidelines hammered out were therefore never adopted, I assume that the OPC and the District will adopt guidelines of similar detail and content. Such guidelines would allay the concerns of the plaintiffs as well as serve the interests of the public. The opinions expressed in this

memorandum as to the constitutionality of the Act are *not* reliant upon the eventual adoption of any such guidelines and stand regardless of whatever action the OPC takes to implement the Act.

Nonetheless, I wanted to take the opportunity to encourage the OPC to adopt such rules. I also want to again commend plaintiffs' counsel for the highly professional manner in which they conducted themselves throughout these proceedings.

**6.** A charter amendment must additionally, like regular D.C. Council actions, pass through a Congressional review period. *Compare* D.C. Code § 1–205(b) *with* D.C.Code § 1–233(c).

which the Public Service Commission operates; its basic mission remains in tact.

Moreover, to hold the changes made by this Act constitute a "charter amendment" would strip local legislators of any real flexibility to deal with emerging problems. Particularly in an area of such crucial local importance as utility regulation, I am reluctant to tie the hands of popularly chosen local lawmakers in the manner in which plaintiffs would have me do.

Finally, changes similar to this have previously been effectuated without charter amendment procedures being invoked. For instance, Council by statute established an Office of the General Counsel within the Public Service Commission. *See* D.C.Code § 43–405. Such a change was properly enacted and quite clearly did not amount to a charter amendment.

Given this understanding of the history of the Public Service Commission and home rule in the District of Columbia, I find that the Act in question here was not a charter amendment and therefore did not have to be put in front of the voters of the District for their approval once their popularly elected representatives had approved it.

## IV.  SUBSTANTIVE CONTENT

Having concluded that D.C.Law 5–153 was properly enacted, I must now turn to the question of whether OPC's independent assessment authority or its independent investigative and data gathering authority will deprive the plaintiffs of due process.[7]

### A.  Independent Assessments

■ The plaintiff's primary due process complaint concerns the OPC's assessment authority. Viewing the ability of the OPC to assess the utility for its expenses as an ability to "take" their property, the plaintiffs contend that the procedures preceding such a deprivation established by D.C.Law 5–153 do not amount to sufficient constitu-

tional due process. Specifically plaintiffs point to Section 3(e) of Law 5–153 which provides that:

Once the Office of the People's Counsel has determined its requirements, the Office shall submit its determination for review by the Commission. Based on the record established by the Office's determination of its requirement for special franchise tax funds, the Commission shall review the Office's determination solely to determine whether it is consistent with the statutory authority of and rules issued by the Office, whether it is supported by findings, whether those findings are sustained by substantial evidence in the record submitted to the Commission, and whether it is within the [total dollar amount] limitations enumerated in subparagraph (3).

D.C.Law 5–153, § 3(e) (amending D.C.Code § 43–612(a)). Reading this language as negatively as possible, plaintiffs conclude that "... the Public Service Commission has no opportunity to consider independently and impartially the necessity and reasonableness of the People's Counsel's assessment determinations," Plaintiff's Statement of Points and Authorities in Opposition to Defendant's Motion to Dismiss, at 15, and that therefore they will have their property—in the form of assessment fees—taken without due process. I disagree because I find significant procedural safeguards in D.C.Law 5–153.

*First,* the statute demands that OPC issue "rules reasonable and necessary to provide procedures for the determination of their needs for funds ..." D.C.Code § 43–612(a)(5). *Second,* the statute demands that the established procedural rules make the OPC, before requesting funds, disclose "the name of each contractor to be hired, the qualifications of each contractor, a brief description of the work to be done by each contractor, the number

---

7. Plaintiffs asserted in their complaint that there was some equal protection problem with this statute. Complaint at ¶ 27. However they have not mentioned this claim in their opposition to the motion to dismiss. Because of the lack of briefing on their part and the fact that I can see no equal protection problem with the statute, I consider the due process argument as the only constitutional challenge to the statute.

of persons employed by each contractor and the hourly rate to be charged by each person thus employed, and the estimated value of each contract." *Id.*

*Third,* the Act mandates that only the Commission has the authority to issue an order directing a utility to make deposits to the fund supporting the OPC. Thus even after complying with the elaborate procedures outlined above, the OPC cannot issue assessment orders against the utilities. Rather, plaintiffs are afforded yet another level of protection in that the statute requires the OPC to establish a record, supported by substantial evidence, to justify its requests for PSC assessment orders. D.C.Code § 43–612(a)(2).

*Finally,* the statute demands that the PSC review OPC assessment requests before calling upon utilities to make a deposit of funds. Thus the Commission maintains a vast and constitutionally significant amount of oversight. It has authority to determine whether OPC's requests are "consistent with the statutory authority of and rules issued by the Office, whether [they are] supported by findings, whether those findings are sustained by substantial evidence in the record submitted to the Commission, and whether [they are] within the [dollar value] limitations enumerated [in the Act] ..." D.C.Code § 43–612(a)(2). In its oversight function, the Commission acts as an impartial arbiter ensuring that the plaintiffs are not deprived of their property interests without due process.

Needless to say to these plaintiffs, they additionally retain a right of appeal from any assessments to a reviewing court.

Because the statute requires rather stringent accounting by the OPC for its assessments, as well as an adequate review by the PSC, I am convinced that there exists sufficient process to ensure that the utilities' funds will not be taken without due process of law.

### B.  Independent Investigative Authority

■ Plaintiffs argue that the Act's grant of explicit independent investigatory authority to the OPC is unconstitutional because it allegedly confers on the OPC "the power to conduct investigations of Plaintiff, without limits as to their reasonableness, scope, duration, or frequency." Plaintiff's Statement of Points and Authorities in Opposition to Defendant's Motion to Dismiss, at 27.  I disagree.

Whether within the context of formal proceedings before the Commission, or independently structured, an OPC investigation is limited in scope to an examination of "the services given by, the rates charged by, and the valuation of the properties of the public utilities under the jurisdiction of the Commission." D.C.Code § 43–406(d)(4) (1985 Ed.). Thus the so-called "independent" investigative authority has imposed upon it by the Act a "relevancy" test which clearly circumscribes this authority within prudential limits.

### C.  Data Gathering Authority

Plaintiffs also complain that D.C.Law 5–153 is constitutionally defective because it grants the OPC broad data gathering authority. Specifically, they allege that "The People's Counsel's ... broad discovery authority violate[s] Plaintiff's constitutional rights by unreasonably subjecting Plaintiff to the interruption of its business and to the substantial expense necessary to comply with the People's Counsel's unrestricted demands." Plaintiff's Statement of Points and Authorities in Opposition to Defendant's Motion to Dismiss, at 24.

Again, there are several layers of protection afforded plaintiffs. *First,* the statute limits the data gathering authority of the OPC to information "reasonably relevant and material to the investigation or proceeding." D.C.Code § 43–518(c). *Second,* in the event of noncompliance by the plaintiffs, the OPC has no authority to order compliance but must petition PSC for an order compelling production. *Id.* Thus, the statute indicates that the PSC will adjudicate production disputes between these parties. *Third,* the PSC has the authority to protect from disclosure plaintiffs' "trade secrets and other confidential research, de-

velopment, or commercial information ..."
*Id.*

█ Given the protections built into D.C.Law 5–153, D.C.Code § 43–518(c), I am again convinced that the plaintiffs will not be deprived of their property without due process of law.

## V. CONCLUSION

Having found the D.C. Council properly enacted the statute at issue in this case, and that said statute does not deprive the plaintiffs of due process of law, I grant defendant's motion to dismiss.