PEOPLE'S COUNSEL OF the
DISTRICT OF COLUMBIA,
Petitioner,

v.

PUBLIC SERVICE COMMISSION OF
the DISTRICT OF COLUMBIA,
Respondent,

Potomac Electric Power Company,
Washington Metropolitan Area
Transit Authority, Intervenors.

No. 83–710.

District of Columbia Court of Appeals.

Argued Feb. 8, 1984.

Decided April 16, 1984.

question of exhaustion of OPM remedies is not     before us.

John T. Schell, Washington, D.C., with whom Jay D. Pedelty, Brian Lederer, and Elizabeth A. Noel, Washington, D.C., were on briefs, for petitioner.

Lloyd N. Moore, Jr., Washington, D.C., with whom, Roberta Willis Sims, Washington, D.C., was on brief, for respondent.

William Dana Shapiro, Washington, D.C., with whom Edward A. Caine, Washington, D.C., was on brief, for intervenor Potomac Electric Power Co.

Onkar N. Sharma, Washington, D.C., for intervenor Washington Metropolitan Area Transit Authority.

Before MACK, BELSON and TERRY, Associate Judges.

BELSON, Associate Judge:

▇▇▇ This appeal poses the question whether this court should uphold the Public Service Commission's decision not to require Potomac Electric Power Company to convert its recently-completed power-generating plant, Chalk Point Unit 4, from an oil-burning to a coal-burning facility. While the record is long and complex, the controlling issues are simple and can be disposed of summarily.[1]

Petitioner, Office of People's Counsel, and intervenor, Washington Metropolitan Area Transit Authority, unsuccessfully urged the Commission to require conversion. Their first challenge here is to PSC's position that throughout the administrative proceedings OPC had the burden of persuading PSC to order conversion.[2] It is true that the Commission never explicitly allocated the burden of persuasion until it ruled on OPC's application for reconsideration of the final order on appeal here.[3] OPC asserts that it was prejudiced by this after-the-fact allocation.

▇▇▇ As PSC points out, however, OPC advocated conversion throughout the proceedings on Chalk Point Unit 4's fuel mode.[4] OPC was thus the proponent of an

1. Our scope of review is narrow. We accord great deference to the expertise of the Commission; indeed, our review of a utility commission order is the narrowest judicial review in the field of administrative law. *Washington Gas Light Co. v. Public Service Comm'n,* 450 A.2d 1187, 1193 (D.C.1982) (per curiam). Under D.C. Code § 43–906 (1981), our review is limited to "questions of law, including constitutional questions; and the findings of fact by the Commission shall be conclusive unless it shall appear that such findings … are unreasonable, arbitrary, or capricious." In accordance with that statute, we must determine whether the order is just and reasonable, *see People's Counsel v. Public Service Comm'n,* 399 A.2d 43, 46 (D.C.1979), and ensure that the Commission " 'has respected procedural requirements, has made findings based on substantial evidence, and has applied the correct legal standards to its substantive deliberations,' " *Potomac Electric Power Co. v. Public Service Comm'n,* 402 A.2d 14, 18 (D.C.) (en banc), *cert. denied,* 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979) (quoting *Telephone Users Ass'n v. Public Service Comm'n,* 304 A.2d 293, 296 (D.C.1973), *cert. denied,* 415 U.S. 933, 94 S.Ct. 1448, 39 L.Ed.2d 492 (1974)).

2. In Final Order No. 7795, the main order on appeal here, PSC stated without analysis that OPC and the Commission Staff had failed to demonstrate imprudence. OPC took this statement to indicate the Commission's view that OPC had had the burden of persuasion throughout the proceedings on conversion. In Order No. 7878, the denial of OPC's application for reconsideration of Final Order No. 7795, the Commission confirmed that OPC had had the burden of persuasion.

3. PSC's Order No. 7107 set out the procedures to be followed in this case, but did not mention the burden of persuasion. The Commission can avoid any future misapprehension concerning the burden of proof by allocating it in such orders.

4. PEPCO began constructing Chalk Point Unit 4 as an oil-fired unit in 1972. OPC first raised the issue of the prudence of PEPCO's Chalk Point Unit 4 planning in Formal Case No. 715, launched in spring 1979. OPC argued that PEPCO's decision to design the plant to burn only oil was unreasonable. However, OPC failed during that proceeding to adduce evidence of the unreasonableness of PEPCO's design. PSC therefore did not impose the sanctions OPC advocated. The Commission reasoned in Order No. 7878 that the decision not to impose sanctions in Formal Case No. 715 shows that PSC decided there on the merits that PEPCO's planning had been reasonable. Accordingly, PSC reasoned, OPC bore the burden of persuading PSC to change this decision. We disagree with PSC's reasoning. The language at page 65 of

order mandating conversion to coal. It was chargeable with the knowledge that the proponent of an order bears the burden of persuasion in a contested administrative case.[5] It is true that PEPCO bore the burden of producing relevant data, for it possessed such data; the fact that PEPCO had the burden of production explains why the company presented its evidence first at the hearings. We agree with the Commission that the burden of persuasion, however, resided with OPC.

OPC's second main argument is that PSC did not explain adequately its decision not to require conversion to coal. In Final Order No. 7425, the major order preceding the order now on appeal, the Commission majority agreed with its hearing agent that the evidence was extremely strong that the public interest favored conversion.[6] The Commission stated at page 8 of Final Order No. 7425:

> [W]e are convinced that were we predisposed to order the conversion of the Chalk Point Unit 4 at this time, the record would fully support our position.... It is our opinion that the find-

ings of fact ... support, and we so rule, a determination that conversion will reasonably promote the public interest.

> ... The record clearly establishes the economic desirability of conversion, and we agree that PEPCO should have begun its evaluation far sooner. We cannot understand why PEPCO did not and we question the wisdom or prudence of PEPCO's management in this regard.

OPC and WMATA assert that this amounted to a decision that conversion to coal should go forward, with the specific details to be worked out in the next stage of the proceedings. At that next stage, however, the stage that terminated in the order on appeal here, PSC declined to order conversion.

In arguing that PSC irrationally ignored its earlier conclusions, OPC and WMATA overlook the fact that in Final Order No. 7425 PSC never actually ordered conversion. Although PSC reached a general conclusion that conversion to coal was in the public interest, it demanded further evidence of the costs and benefits of particu-

Order No. 7135 (reprinted as the appendix to OPC's brief), the order terminating Formal Case No. 715, shows clearly that PSC decided not to reach the merits of the question of PEPCO's prudence in planning. The Commission instead launched another proceeding to investigate that question. That proceeding, Formal Case No. 737, terminated in the order on appeal here.

Although we disagree with PSC that after Formal Case No. 715 OPC was battling against a status quo in which PEPCO's planning had been adjudged prudent, we agree with the Commission that OPC was the proponent of an order throughout Formal Case No. 737. The Commission divided Formal Case No. 737 into two phases. The first phase ended with Final Order No. 7425. In that order the PSC discussed the propriety of ordering conversion but did not make a final decision on whether to order it. The Commission requested more information. In Final Order No. 7795, which ended the second phase of Formal Case No. 737, the PSC decided, based on that further information, not to order conversion. Throughout the proceedings in No. 737, then, OPC was proposing that PSC order conversion (and grant a related rate adjustment). PSC declined to grant the relief OPC sought. PSC's favorable comments about conversion in Final Order No. 7425 did not alter the

fact that because the Commission had not yet ordered conversion, OPC still had to persuade PSC to take action.

5. D.C.Code § 1–1509(b) (1981) states in part:
> (b) In contested cases, except as may otherwise be provided by law, other than this subchapter, the proponent of a rule or order shall have the burden of proof.

We have interpreted the phrase "burden of proof" in this statute to mean burden of persuasion. *See Washington Public Interest Org. v. Public Service Comm'n,* 393 A.2d 71, 77 (D.C. 1978), *cert. denied,* 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979). Formal Case No. 737, in which a rate adjustment as well as a conversion order was at issue, was a contested case within the meaning of D.C.Code §§ 1–1502(8) and 43–608 (1981).

6. In his Recommended Decision, Order No. 7391 at 87, the hearing agent found that substantial evidence supported the economic desirability of conversion. He stated that "the evidence is substantial to an extremely high degree that coal conversion is still the economic path even at this late date." The Commission explicitly adopted these findings. Final Order No. 7425 at 7.

lar conversion plans rather than ordering conversion.

When the evidence was in, PSC determined that unprecedented political and economic factors made the future differential between oil prices and coal prices so extraordinarily unpredictable that PSC could not conclude with a reasonable degree of certainty that conversion to coal was in the public interest. The stakes were high. If the Commission misjudged in ordering conversion, the huge cost of conversion, estimated at $420,000,000 even without consideration of the cost of capital,[7] would be misspent. That misjudgment would impose an enormous burden on the consumers of electrical service. In short, OPC failed to sustain its burden of persuading the Commission that the savings in fuel costs upon ·conversion to coal justified incurring the cost of conversion.

■ OPC and WMATA argue that it is the Commission's function to make difficult predictions of future developments, and that PSC should not have shirked its duty here. We agree, of course, that PSC must make numerous estimates of what will hap-

pen in the future. However, we defer to PSC's determination that the future oil-coal price differential is so exceptionally unpredictable that PSC should not hazard a guess and then base a decision on that guess. PSC's decision in its final order to reject the tentative conclusions it had reached in its earlier order was rationally based on that determination of uncertainty.

■ We find unpersuasive petitioner's further argument that PSC erred in failing to determine the cost of capital or the discount rate that would effect the total cost of conversion to coal. PSC concluded that even without those additional costs, the $420,000,000 price of conversion was so high and the likelihood of benefits so uncertain that conversion was inadvisable. That conclusion made the suggested further determinations irrelevant.

■ Our favorable review of the PSC determinations discussed above makes it unnecessary to address the other issues raised by OPC and WMATA.[8] Accordingly, the orders before us for review are

*Affirmed.*

7. PSC's decision in Final Order No. 7795 at 14 to accept PEPCO's and Commission Staff's estimates of the cost of a new coal boiler and to reject OPC's was not arbitrary or capricious. PSC explained the reasons for its decision.

8. OPC argues strenuously that the Commission should have reduced rates because PEPCO imprudently failed to convert to cheaper fuel. We note first that, contrary to PSC's suggestion, OPC has timely raised the question whether PSC should have ordered a rate adjustment. Evidence on the costs, benefits, and timing of different conversion options, which the Commission would have needed to compute a rate adjustment, was not in the record until the second phase of Formal Case No. 737. Final Order No. 7795, which terminated that second phase, was thus the first order in which PSC could have adjusted rates.

OPC argues that if PEPCO had studied conversion options promptly instead of delaying the study, the company could have started converting the plant during the late 1970's or early 1980's, at construction prices lower than current prices. In addition, the plant would have been able to begin burning coal sooner, and so operating costs would have been reduced sooner. Commissioner Long, who dissented from Final

Orders Nos. 7425 and 7795, concluded from these arguments that PSC could order two sorts of rate adjustments. First, when PEPCO finally began conversion, PSC could allow PEPCO to include in its rate base only the lower construction costs that the company would have paid if it had prudently started prompt conversion. Second, on the date that a prudent, prompt PEPCO would have completed conversion, PSC could reduce the rate base to the amount that coal-fired operation would have cost on that date, forcing PEPCO to bear the higher operating costs of burning oil.

In light of the Commission's determination that it could not find that PEPCO acted improvidently in failing to convert, however, both a construction cost rate adjustment and an operating cost rate adjustment are inappropriate. Logically, the Commission could not penalize PEPCO for a management decision that the Commission sustained.

Nor do we agree with OPC's argument that the Commission failed in its duty to explain why it refused to order a rate adjustment. It had no such duty. Once the Commission had decided that conversion was not warranted, the rate adjustment arguments became irrelevant; as we have said, PSC logically could not have ordered

---

an adjustment. Administrative agencies need not explicitly consider irrelevancies. *See Washington Gas Light Co. v. Public Service Comm'n,* *supra* note 1, 450 A.2d at 1193 (holding that agency must make clear that it has considered all *relevant* information).