661 A.2d 131 (1995)
POTOMAC ELECTRIC POWER COMPANY, Petitioner,
v.
PUBLIC SERVICE COMMISSION OF THE DISTRICT OF COLUMBIA, Respondent,
Office of the People's Counsel of the District of Columbia, Intervenor.
No. 94-AA-799.
District of Columbia Court of Appeals.
Argued December 16, 1994.
Decided June 19, 1995.
*133 Ivan K. Fong, with whom Alan A. Pemberton, Kirk J. Emge, and Paul H. Harrington, Washington, DC, were on the brief, for petitioner.
Daryl L. Avery, with whom Edwin E. Huddleson, III, Washington, DC, was on the brief, for respondent.
Elizabeth A. Noel, with whom Sandra Mattavous-Frye, Karen R. Sistrunk, Miles H. Mitchell, and Jennifer A. Duane, Washington, DC, were on the brief, for intervenor.
Before FERREN and KING, Associate Judges, and WEISBERG,[*] Associate Judge of the Superior Court of the District of Columbia.
FERREN, Associate Judge:
Petitioner, Potomac Electric Power Company (PEPCO), challenges portions of two orders of the Public Service Commission of the District of Columbia. In ruling on an application for a rate increase, the Commission allowed PEPCO to recover 75% of actual and projected costs associated with the company's demand-side management[1] (DSM) programs, and thus denied recovery of 25% of those costs. Order No. 10387 at 164; Order No. 10423 at 11. The Commission also refused to allow PEPCO to recover its projected $1.9 million increase in employee benefit costs for 1994. Order No. 10387 at 93; Order No. 10423 at 41. In this appeal, PEPCO contends that the Commission's decisions to disallow 25% of the DSM costs and all of the 1994 increase in employee benefit costs were arbitrary, capricious, and unsupported *134 by substantial evidence. More specifically, PEPCO contends that (1) the Commission's orders fail to apply clearly articulated criteria, as required by previous decisions of this court; (2) the Commission erred in failing to give PEPCO the benefit of a presumption that its costs were prudently incurred; and (3) the selection of the 25% figure for disallowance of DSM costs was arbitrary. We reject the first two arguments but accept the third. Accordingly, we sustain the Commission's conclusion that PEPCO has not justified 100% recovery of its DSM costs, but we must remand for reconsideration of the more specific decision that disallows 25% of those costs; the Commission's orders do not provide a full and clear explanation of why 25% represents the appropriate amount for disallowance. We affirm the decision to refuse recovery of the projected 1994 increase in employee benefit costs.

I.
On June 4, 1993, PEPCO filed an application with the Commission for a permanent retail rate increase of $72,573,000 or 10.8%.[2] The rate increase was based on a twelve month test period ending on June 30, 1993, comprised of eight months of actual data and four months of projected data. On July 30, 1993, the Commission held a pre-hearing conference to allow the parties[3] to clarify the issues proposed for designation. On August 13, 1993, the Commission issued an Order and Report on Prehearing Conference designating the contested issues for the hearing on PEPCO's application. From the beginning of September through the end of November, 1993, the interested parties submitted testimony. The Commission conducted six days of hearings in mid-December, in order to permit cross-examination of all witnesses. The Commission also held community hearings on December 7, 1993, and on January 19 and 26 and February 16, 1994.
On March 4, 1994, the Commission authorized a rate increase of $23,234,000.00, or 3.5%. Order No. 10387. In this Order, the Commission rejected the following costs in the requested rate increase: (1) 25% of PEPCO's costs associated with DSM programs; (2) 100% of the administrative and planning costs associated with the DSM programs; and (3) 100% of PEPCO's increased employee benefit costs for 1994. On April 4, 1994, PEPCO filed an application for reconsideration. On May 4, 1994, the Commission issued an Order and Opinion on Reconsideration, Order No. 10423, authorizing a rate increase totaling $26,692,000, which, contrary to its initial order, allowed PEPCO to recover 100% of its costs associated with the administration and planning of DSM programs. The Commission, however, reaffirmed the earlier decision not to allow recovery of 25% of the costs associated with those programs or recovery of the anticipated increase in PEPCO's 1994 employee benefit costs.

II.
This Court has "jurisdiction to hear and determine any appeal from an order or decision of the Commission." D.C.Code § 43-905(a) (1990 Repl.). However, the scope of our review is narrowly prescribed by statute:
In the determination of any appeal from an order or decision of the Commission the review by this court shall be limited to questions of law, including constitutional questions; and the findings of fact by the Commission shall be conclusive unless it shall appear that such findings of the Commission are unreasonable, arbitrary, or capricious.
D.C.Code § 43-906 (1990 Repl.). By this provision, Congress vested sole ratemaking authority in the expertise of the Public Service Commission. See Potomac Elec. Power Co. v. Public Serv. Comm'n, 457 A.2d 776, *135 782 (D.C.1983); Potomac Elec. Power Co. v. Public Serv. Comm'n, 402 A.2d 14, 17 (D.C.), cert. denied, 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979). Accordingly:
The Commission, not this court, has the sole responsibility for balancing consumer and investor interests in designing rate structures and approving specific charges.... While we must ascertain that, in striking a balance between the competing consumer and investor interests, the Commission has given reasoned consideration to each of the pertinent factors,... we must not substitute our judgment for that of the Commission.
Potomac Elec. Power Co., 457 A.2d at 782. (citations and internal quotations omitted). We have said, therefore, that "[t]he scope of our review of PSC decisions `is the narrowest judicial review in the field of administrative law.'" Office of People's Counsel v. Public Serv. Comm'n, 610 A.2d 240, 243 (D.C.1992) (quoting Office of People's Counsel v. Public Serv. Comm'n, 571 A.2d 206, 208-09 (D.C. 1990) (quoting Office of People's Counsel v. Public Serv. Comm'n, 482 A.2d 404, 407 (D.C.1984) (quoting Potomac Elec. Power Co. v. Public Serv. Comm'n, 402 A.2d at 17))); accord Washington Gas Light Co. v. Public Serv. Comm'n, 450 A.2d 1187, 1193 (D.C. 1982).
In light of the Commission's expertise, its rate orders are presumptively valid, and "[t]he petitioner challenging an order carries the heavy burden of demonstrating clearly and convincingly a fatal flaw in the action taken."[4]Potomac Elec. Power Co., 457 A.2d at 783 (citing Federal Power Comm'n v. Hope Natural Gas Co., 320 U.S. 591, 602, 64 S.Ct. 281, 287-88, 88 L.Ed. 333 (1944)). In order to ensure that judicial review can be meaningful, however, we have imposed a separate and independent burden on the Commission to explain its actions fully and clearly. See Washington Pub. Interest Org. v. Public Serv. Comm'n, 393 A.2d 71, 75 (D.C.1978), cert. denied, 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979) ("the court, when presented with a nonfrivolous petition for review, has a responsibility to hold the Commission accountablethrough as many remands as necessaryfor satisfying a burden all its own: to explain its actions fully and clearly. A utility rate cannot be deemed `reasonable' simply because an expert agency says it is.").
A full and clear explanation of a ratemaking decision must include the following components. First, the Commission must announce the criteria governing the rate determination, and, second, it must explain "how the particular rate order reflects application of these criteria to the facts of the case." Id.; Potomac Elec. Power Co., 457 A.2d at 783. As to application of ratemaking criteria, the Supreme Court has held that, "unless the overall effect of a rate is `unjust and unreasonable,' the Commission's order should be approved, irrespective of `infirmities' in the methodology used to calculate it." Federal Power Comm'n v. Hope Natural Gas Co., 320 U.S. 591, 602, 64 S.Ct. 281, 287-88, 88 L.Ed. 333 (1944), cited in Washington Pub. Interest Org., 393 A.2d at 75. While the reasonableness of the "overall effect" of the rate order remains the primary consideration, however, the Commission nonetheless has an obligation to disclose the methodology by which that decision was reached, for the actual methodology used may have a bearing on the court's overall judgment as to the reasonableness of the order:
Absent precise explanation of methodology as applied to the facts of the case, there is no way for a court to tell whether the Commission, however expert, has been arbitrary or unreasonable.
Washington Pub. Interest Org., 393 A.2d at 77.
Finally, the Commission must demonstrate that its rate order is "in accordance with the reliable, probative, and substantial evidence." D.C.Code § 1-1509(e) (1992 Repl.). We have said that this substantial evidence test is satisfied if there is "a demonstration in the findings of a `rational connection between facts found and the choice made.'" Washington Pub. Interest Org., 393 A.2d at 77 *136 (citing Brewington v. District of Columbia Bd. of Appeals and Review, 299 A.2d 145, 147 (D.C.1973)) (emphasis in original).
With these principles in mind, we turn to the Commission's orders and PEPCO's specific claims of error.

III.
PEPCO contends that the Commission's decision to disallow recovery of 25% of PEPCO's DSM costs should be vacated and remanded because the Commission failed to apply "clearly articulated criteria" to its evaluation of PEPCO's application for a rate increase, and therefore the Commission has not provided a full and clear explanation of its decision.[5]See Washington Pub. Interest Org., 393 A.2d at 77. We cannot agree. While we deal separately with the Commission's choice of the 25% disallowance figure, see infra Part V, we conclude here that (1) the Commission's decision to disallow a portion of PEPCO's DSM costs is based on clearly articulated criteria of which PEPCO had ample notice; (2) the Commission's orders explain the application of those criteria to PEPCO's evidence; and (3) the Commission's decision not to allow 100% of the DSM costs is supported by substantial evidence of record.
In its Order and Report on Pre-Hearing Conference (No. 10271), the Commission announced the criteria that would govern its evaluation of the reasonableness of PEPCO's proposed DSM costs. In the section of the report listing the contested issues for this ratemaking proceeding, the Commission inquired:
24. Are PEPCO's DSM ... programs prudently managed; and consistent with Commission directives?[6]
Order No. 10271 at 28. The Commission established this standard in Potomac Elec. Power Co., Formal Case No. 889, Order No. 9059, 11 D.C.P.S.C. 302, 438 (1990), and has used it to evaluate PEPCO's requests for inclusion of DSM costs in the rate base since that time. See, e.g., Potomac Elec. Power Co., Formal Case No. 905, Order No. 9868, 12 D.C.P.S.C. 651, 715 (1991). Thus, prior to the hearing in this case, the Commission had satisfied its obligation to announce "the criteria governing the rate determination." Washington Pub. Interest Org., 393 A.2d at 75.
The Commission's orders explain how the application of the prudent management criteria to PEPCO's evidence led to the conclusion that PEPCO had not shown that all of its DSM costs resulted from prudently managed programs. In the first order in this case, the Commission explained:
To address the issue of prudent management, PEPCO submitted direct and rebuttal testimony and exhibits of Witnesses Grantley, Wraase and Mayberry. See e.g. PEPCO Exhibits (L), (L)-1 through (L)-4; PEPCO brief at 247-272. For example, to indicate the appropriateness of cost recovery for the High-Efficiency Heat Pump/Air-Conditioner Rebate Program PEPCO provided a brief description of the program. PEPCO Exhibit (L) at 11-12. PEPCO also indicated that this energy conservation program is primarily marketed through trade allies. Id. As of June, 1993, PEPCO contends that $517,524.00 in *137 rebates had been paid for the installation of 2,573 units in the District of Columbia. Id. at 11-12. To facilitate the purchase and installation of efficient air-conditioners and heat pumps, PEPCO is offering competitive interest loans with the help of Riggs Bank. Id. PEPCO also explains that 104 loan applications have been approved with 29 of those distributed to District of Columbia customers. Id. The total loans for the 29 District of Columbia customers amounted to $102,993.00. Id. PEPCO further provides estimated versus actual participation levels and budgeted versus actual expenditures, for the High Efficiency Heat Pump/Air Conditioner Rebate program. See PEPCO exhibit (L)-1, (L)-2; PEPCO exhibit (3D)-6. Finally PEPCO provides a revenue increase figure for this program in Exhibits (2D)-1 at 3(u); PEPCO Exhibit (3D)-4.
From the Commission's review of testimony and exhibits related to the High Efficiency Heat Pump/Air-Conditioner rebate program (as well as similar evidence submitted to support other full-scale and pilot DSM programs) it is evident that PEPCO failed to completely carry its burden as to the reasonableness of the costs associated with these programs. Although it is clear that a certain level of expenditure is reasonable (given our findings in Formal Case No. 917[7] and the information regarding rebates paid and DSM participation in this proceeding), it is equally clear that PEPCO failed to explain satisfactorily why budgeted expenditures fail to match projected and actual costs. Moreover, PEPCO failed to adequately justify the level of costs necessary to successfully implement the DSM programs. The problem is one of a justified nexus between the proposed costs and the implementation of the program. Furthermore, there is no explanation which demonstrates that the expenditures in totality are reasonable. Simply stating levels of participation, rebates paid, and how the program was marketed does not provide sufficient and complete information. It indicates that some funds were necessary, but it fails to provide the Commission with information that would indicate that all costs were prudently and cost-effectively incurred .... Moreover for DSM activities, other than rebates paid, PEPCO supplied no cost-based justification. In this regard, PEPCO has failed to provide information that the DSM programs were implemented at the lowest feasible cost. Accordingly, the Commission concludes that a 25% disallowance of DSM costs is appropriate. To provide PEPCO with full recovery would ignore PEPCO's failure to fully justify the costs associated with its DSM programs.
Order No. 10387 at 165-66 (emphasis added). In its Order on Reconsideration the Commission added:
[T]he Company fails to reconcile the significant differences in individual projections of costs and actual costs. A review of PEPCO exhibits (L)-2, (L)-3 and 3(D)-6 indicates significant deviations between projected and actual costs for individual DSM programs. These exhibits also provide an overall amount for DSM expenditures. Neither the differences nor overall amount has been adequately justified. PEPCO maintains that the Commission is applying a new standard, which has not been applied in past cases. We disagree with PEPCO. Adoption of PEPCO's position would require that the Commission abrogate its responsibility to ensure that only just and reasonable DSM costs are passed on to ratepayers. In other words PEPCO's position would eliminate the Commission's evaluation of whether the DSM programs were prudently managed so that the costs involved in the programs are reasonable. Thus we reject PEPCO's attempt to restrict the Commission's review of its DSM program costs.
Order No. 10423 at 16 (emphasis added).
The Commission accordingly found that PEPCO had failed to explain (1) why actual costs for some programs were greater than projected costs,[8] and (2) why this level *138 of total expenditures, as opposed to some lesser amount, was necessary for PEPCO to implement its DSM programs. The Commission therefore ruled that PEPCO had not provided sufficient evidence for the Commission to conclude, in compliance with its statutory responsibility,[9] that only "reasonable" costs would be passed on to its customers if PEPCO were permitted to recover all its DSM costs.[10]
We reject PEPCO's argument that the Commission's decision to deny recovery of a portion of the utility's DSM costs was arbitrary. The Commission announced that recovery of DSM costs would be evaluated on the basis of whether PEPCO showed that its DSM programs were prudently managed, and then, in its orders, the Commission explained why the prudent management standard had not been met. We conclude that the Commission provided a full and clear explanation of its decision that PEPCO had not justified recovery of all its DSM costs. See Washington Pub. Interest Org., 393 A.2d at 75.[11]
Finally, we conclude that the Commission's finding that PEPCO had not shown that all its DSM programs were "prudently managed" is supported by substantial evidence. Our review of the record suggests that PEPCO adduced voluminous evidence explaining and cataloguing its DSM expenditures, but that PEPCO'S evidence simply did not address the question that concerned the Commission: why it was necessary to spend money at those particular levels. Nor did the evidence explain what, if any, benefits would inure to ratepayers as a result of *139 PEPCO'S levels of spending on DSM programs.[12]
In sum, we conclude that the Commission's decision that PEPCO could not recover all its DSM costs was rationally drawn from the record on which it was based. See Washington Pub. Interest Org., 393 A.2d at 77.[13]

IV.
PEPCO contends that the foregoing analysis, which essentially sustains the Commission's reasoning, is defective because the Commission erred in failing to give the Company the benefit of a presumption that ordinary business expenditures are prudently incurred. In support of this argument, PEPCO cites West Ohio Gas v. Public Utils. Comm'n, 294 U.S. 63, 72, 55 S.Ct. 316, 321, 79 L.Ed. 761 (1935), where the Supreme Court, with reference to the utility's challenged advertising expense, opined:
Good faith is to be presumed on the part of the managers of a business.... In the absence of a showing of inefficiency or improvidence, a court will not substitute its judgment for theirs as to the measure of a prudent outlay.
Id. (internal citation omitted). With regard to the required showing of inefficiency or improvidence, the Court noted that "[t]he waste or negligence ... must be established by evidence of one kind or another, either direct or circumstantial." Id. at 68, 55 S.Ct. at 319. PEPCO argues that the presumption applies and that, without evidence of improvidence or inefficiency, the Commission may not disallow recovery of DSM expenses on the ground that PEPCO has not affirmatively demonstrated that its expenses were prudently incurred. While PEPCO agrees that it has the ultimate burden of persuasion to justify recovery of any DSM expense, it argues that, because of the West Ohio Gas presumption of prudence, the party challenging the expense initially has the burden of bringing forth some evidence tending to show that the particular expense was not prudently incurred before the burden shifts to the utility to justify the expense.
PEPCO's reliance on West Ohio Gas is misplaced. Even if we assume, solely for the sake of argument, that the presumption of "prudent outlay" would apply to DSM expenses, and not merely to advertising or similar costs,[14] we are satisfied that the record *140 contains evidence sufficient to overcome the presumption that PEPCO's DSM expenses were prudently incurred, and to place the burden of persuasion on PEPCO to justify those expenses. The West Ohio Gas opinion itself notes that the presumption of prudence does not survive "a showing of inefficiency or improvidence." Id.; accord Anaheim, Riverside v. FERC, 216 U.S.App.D.C. 1, 11, 669 F.2d 799, 809 (1981). We take this to mean that, at most, West Ohio Gas intended a so-called "bursting bubble" presumption that vanishes once opponents of the expenditure make a showing of improvidence.[15] At that point, the burden of persuasion, not merely of producing rebuttal evidence, falls squarely on the utility to show that the costs for which it seeks recovery are reasonable. As the United States Court of Appeals for the District of Columbia Circuit noted:
[U]tilities seeking a rate increase are not required to demonstrate in their cases-in-chief that all expenditures were prudent.... However, where some other participant in the proceeding creates a serious doubt as to the prudence of an expenditure, then the applicant has the burden of dispelling these doubts and proving the questioned expenditure to have been prudent.
Anaheim, 216 U.S.App.D.C. at 11, 669 F.2d at 809. (internal quotations and citations omitted).
Applicable statutory and case law in this jurisdiction preclude any other approach. D.C.Code § 1-1509(b) (1992 Repl.) provides:
In contested cases, except as may otherwise be provided by law, other than this subchapter, the proponent of a rule or order shall have the burden of proof.
See People's Counsel v. Public Serv. Comm'n, 474 A.2d 835, 837 (1984) (the proponent of an order bears the burden of persuasion[16] in a contested administrative case); Washington Gas Light Co. v. Public Serv. Comm'n, 450 A.2d 1187, 1227 n. 55 (D.C. 1982) ("the burden of proof remains in its customary placeon the utility.").[17] Put succinctly: if the West Ohio Gas presumption applies at all, it is sufficient to carry the day only when there is no showing that a utility's costs are inefficient or improvident.[18]
In this case, the reasonableness of PEPCO's DSM costs was specifically designated as a contested issue in the Commission's review of PEPCO's application for a rate increase. See Order No. 10271 at 28. Furthermore, PEPCO'S own exhibits (L)-2 and (3D)-6, showing a discrepancy between actual costs and budgeted and projected costs for the DSM programs, see supra note 8, were sufficient to overcome the West Ohio Gas presumption, if applied, and there is substantial record evidence to support the Commission's ultimate conclusion that PEPCO had failed to sustain its burden to justify recovery of one hundred percent of its DSM costs. *141 For these reasons, the Commission did not err in placing the burden on PEPCO to show that those costs were appropriate and reasonable.

V.
PEPCO argues that the Commission's decision to disallow the particular percentage by which DSM costs were reduced25%was arbitrary and cannot stand on this record. We agree. Neither Commission decision provides a full and clear explanation of why the Commission chose 25% as the appropriate percentage of DSM costs to disallow.
The 25% figure was originally suggested by Cynthia Mitchell, an OPC witness. No other witness either suggested or provided a rationale for the particular 25% disallowance eventually selected. Witness Mitchell's original suggestion for a 25% reduction in allowable DSM costs was based on the following four factors: (1) PEPCO had paid $7,985 in rebates in connection with its High Efficiency Air-Conditioner/Heat Pump program; (2) PEPCO's test period peak demand and annual energy savings were based on pre-program engineering estimates; (3) PEPCO failed to provide the source documentation for how the engineering estimates were derived; (4) the kilowatt hour savings which PEPCO reported were not within a reasonable range of comparable Energy Plan goals. Order No. 10387 at 158.
All the reasoning underlying witness Mitchell's 25% recommendation, however, either was subsequently rejected by the Commission or withdrawn by OPC. Of the $7,985 in rebates which OPC initially had argued that PEPCO should not be allowed to recover, OPC withdrew that recommendation as to $3,189, and the Commission found that PEPCO had not requested cost recovery of the remaining $4,796.[19] Order No. 10387 at 164. The Commission expressly rejected Witness Mitchell's second and third factors in its first order: "OPC's testimony regarding energy saving levels and the use of engineering estimates... does not provide a basis to disallow cost recovery, inasmuch as the Commission has previously ruled that it would not consider such factors." Order No. 10387 at 164. OPC withdrew the fourth reason entirely.
Although the Commission specifically rejected the reasoning underlying the 25% figure, it nonetheless adopted that amount as the appropriate disallowance percentage without providing any other rationale for it. The first order simply states: "Based upon our review of the evidence in this proceeding, we concur with OPC that a 25% disallowance is reasonable and necessary.... PEPCO has failed to provide information that the DSM programs were implemented at the lowest feasible cost. Accordingly, the Commission concludes that a 25% DSM disallowance is appropriate." Order No. 10387 at 164, 166. The Commission thus appears to justify the 25% figure as somehow inherently suggested by the Commission's overall finding that PEPCO had not demonstrated that all its DSM programs were prudently managed.
There is no further elaboration of the relationship between the insufficiencies in PEPCO's evidence and the Commission's choice of the 25% figure in its Order on Reconsideration. Indeed, the explanation in the second order is even more cryptic than that in the first: "As during the hearings, OPC's response, on reconsideration, has perceptively articulated a primary reason for the 25% disallowance of DSM costs. See OPC (O) at 6-7." Order No. 10423 at 11. In fact, however, exhibit OPC (O), the testimony of OPC witness Charles W. King, does not provide any explanation or rationale whatsoever for the choice of the 25% figure. Witness King states, in unmistakable terms, the rationale for not allowing PEPCO to recover 100% of its DSM costs, but he provides no guidance as to the specific figure that would be appropriate for disallowance:
PEPCO must be required to demonstrate that the dollars spent on each program have a direct beneficial effect on ratepayers *142 that ultimately will translate into reduced ratepayer costs. It is not adequate for PEPCO simply to verify that it spent money on DSM programs. PEPCO must demonstrate that there has been verifiable value recovered by ratepayers.
OPC Exhibit (O) at 6. As in the first order, therefore, the Order on Reconsideration fails to articulate fully and clearly a basis for using the 25% figure.
In its brief on appeal the Commission argues that its 25% disallowance is justified, very simply, because the Commission "relied on its own expert judgment, discretion, and experience." As we have stressed years ago, however, "[a] utility rate cannot be deemed `reasonable' simply because an expert agency says it is." Washington Pub. Interest Org., 393 A.2d at 75. The Commission does not explain, in either of its orders or in its briefhow it exercised its discretion, as applied to the facts in this record, to arrive at the 25% figure. See id. at 77 ("[A]bsent precise explanation of methodology as applied to the facts of the case, there is no way for a court to tell whether the Commission, however expert, has been arbitrary or unreasonable"). The Commission, therefore, has not demonstratedas our case law requires of the Commission"a rational connection between the facts found and the choice made." Id. (citation omitted).
We remand to the Commission the portion of each order disallowing DSM cost recovery. Although we are satisfied that the Commission need not allow PEPCO 100% of DSM costs, a fuller and clearer explanation is required to justify the percentage that is disallowed. On remand, the Commission shall explain how application of the prudent management criteria to the facts of this case leads to the conclusion that 25% (or whatever greater or lesser figure the Commission determines is appropriate) cannot lawfully be recovered from PEPCO's ratepayers.

VI.
Finally, PEPCO contends that the Commission's decision to disallow its projected 1994 employee benefit costs was arbitrary, capricious, and unsupported by substantial evidence. We do not agree. Although PEPCO had requested recovery of an additional $1,934,000 in projected post test-year employee benefit costs, the company's evidence in support of these costs consisted solely of cursory explanations of how the costs were calculated. Nor did those explanations make clear why this added cost burden should be passed on to District of Columbia ratepayers. We conclude, accordingly, that the Commission's decision to deny PEPCO recovery of these additional employee benefit costs was neither arbitrary nor capricious but, rather, was a reasonable exercise of the Commission's discretion.[20]See People's Counsel v. Public Serv. Comm'n, 455 A.2d 391, 399 (D.C.1982)
As an initial matter, PEPCO claims that under West Ohio Gas, 294 U.S. at 72, 55 S.Ct. at 321, its employee benefit costs presumptively are prudently incurred and, for that reason, should be recoverable absent a showing by the Commission of imprudent cost management. Again, even if we assume for the sake of argument that the presumption applies to expenses other than advertising and similar costs, PEPCO's reliance on it is misplaced, but not for the same reason we have rejected its reliance on the presumption in respect of DSM costs. As we pointed out in Washington Gas Light Co., 450 A.2d at 1227 n. 55, see supra note 14, the West Ohio Gas presumption is inapplicable to expenditures that do not benefit ratepayers. While PEPCO asserts that the presumption applies to its employee benefit costs, it makes no argument that these expenditures benefit ratepayers. We therefore decline even to consider that the West Ohio Gas presumption of prudent outlay applies to PEPCO's expenditures for employee benefits.
*143 As elaborated earlier, moreover, under D.C.Code § 1-1509(b) and our case law the burden of persuasion falls on the utility as the proponent of its cost recovery. See, e.g., People's Counsel, 474 A.2d at 837; Washington Gas Light Co., 450 A.2d at 1227 n. 55; Anaheim, Riverside, 669 F.2d at 809. Furthermore, the period on which this request for a rate increase was based ended on June 30, 1993, and thus PEPCO sought to recover a post test-year employee benefit cost increase. "The burden of justifying an out-of-period adjustment is on the party seeking the adjustment." Office of the People's Counsel, 610 A.2d at 247. We therefore reject PEPCO's argument that the utility presumptively should have been allowed to recover its $1,934,000 1994 increase in employee benefit costs.
We turn, therefore, to the question whether the Commission's decision to disallow this particular cost recovery was based on substantial evidence. The Commission's Order and Report on Pre-Hearing Conference designated "the reasonableness of PEPCO's employee benefit costs" as a contested issue. Order No. 10271 at 9, 26. Despite this explicit notice, however, PEPCO's pre-filed testimony addressing the $1,934,000 projected cost increase consisted of only one paragraph merely identifying the requested rate increase, buttressed by a three page exhibit entitled "METHOD USED TO DEVELOP ESTIMATED CORPORATE BENEFITS COSTS" in which there are brief, general descriptions of how the increased employee benefit costs were calculated in each specific area.[21] In this prehearing testimony, PEPCO did not address at all why District ratepayers should bear this sharply increased cost burden.
The Commission provided PEPCO with an additional opportunity to address employee benefit costs during cross-examination at the hearing. That inquiry focused on the proposed increases in four specific areas: (1) the 33% increase in retirement plan costs; (2) the 8% increase in savings plan costs; (3) the 40% increase in disability plan costs; and (4) the 34% increase in tuition assistance plan costs. PEPCO's responses through witness Wraase focused exclusively on how the costs were generated rather than on why PEPCO was justified in seeking recovery of such an increase. See Order No. 10423 at 37-41.
In its Order on Reconsideration, the Commission discussed the four employee benefit areas which had been the focus of its inquiry during cross-examination. See Order No. 10423 at 37-41. As to each, the Commission found that, although PEPCO had explained why the cost was increasing, it had not explained why it was reasonable for District of Columbia consumers to pay for it. See Order No. 10423 at 37 ("It is not enough to provide an explanation, [] the Commission must be satisfied that the explanation carries the burden of proof to demonstrate the reasonableness of the cost increase."). Accordingly, we conclude that there is a rational connection between the Commission's finding that PEPCO had not demonstrated why it would be reasonable for ratepayers to bear the burden of PEPCO's increased employee benefit costs and the Commission's decision to deny the recovery of those costs.[22]

VII.
In sum, we sustain the Commission's conclusion that PEPCO has not shown that all its DSM costs resulted from prudently managed *144 programs and, therefore, its conclusion that PEPCO cannot reasonably be allowed to recover 100% of those costs from the ratepayers. However, the Commission has not adequately explained why 25% is the appropriate disallowance percentage, and we must remand, accordingly, for reconsiderationfor a fuller and clearer explanation with supporting reasonsto justify the percentage to be disallowed. Finally, we affirm the Commission's decision to deny PEPCO's request for recovery of its 1994 increase in employee benefit costs.
So Ordered.
NOTES
[*] Sitting by designation pursuant to D.C.Code § 11-707(a) (1989).
[1] "Demand-side management" means programs undertaken by utilities to encourage conservation among users and thus to reduce the demand for electricity. See Scott F. Bertschi, Comment, Integrated Resource Planning and Demand-Side Management in Electric Utility Regulation: Public Utility Panacea or Waste of Energy?, 43 EMORY L.J. 815, 839 (1994).
[2] PEPCO's rate application included numerous costs other than those associated with the DSM programs or 1994 employee benefits. Those other costs are not at issue in this appeal.
[3] The following parties submitted comments in response to PEPCO's application: the Office of the People's Counsel (OPC), the General Services Administration (GSA), the District of Columbia Government, the Apartment and Office Building Association (AOBA), Washington Metropolitan Area Transit Authority (WMATA), and Moore Energy Resources Corporation. PEPCO, OPC, AOBA, GSA, and the District Government proposed issues for designation in the proceeding.
[4] We have characterized the petitioner's burden, alternatively, as a "convincing showing of unreasonableness." Washington Pub. Interest Org. v. Public Serv. Comm'n, 393 A.2d 71, 75 (D.C.1978), cert. denied, 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979).
[5] At issue in this appeal is the Commission's denial of PEPCO'S request for full cost recovery in the following full-scale DSM programs: (i) Custom Rebate; (ii) Commercial Lighting; (iii) Thermal Energy Storage; (iv) Shop Doctor; (v) New Building Design; (vi) High Efficiency Heat Pump/Air-Conditioner; (vii) Point-of-sale; (viii) New Home Design; (ix) Multi-Family Direct Installation. Order No. 10387 at 163. PEPCO likewise asks this court to overturn the Commission's decision to deny full cost recovery for the following pilot DSM programs: (i) Water Heater Retrofit; (ii) Compact Fluorescent Bulbs; (iii) Servicing Electric Equipment; (iv) Appliance Recycling Program; (v) Shared Savings; and (vi) In-Home Retrofit. Id. The Commission also denied full cost recovery for three additional pilot programs in its first Order: Teletimer, Ecolawn, and Shades of Green. Id. PEPCO did not seek reconsideration of those rulings, and accordingly they are not before us in this appeal.
[6] The second prong of the standard, which requires that PEPCO's DSM programs be "consistent with Commission directives," is not at issue in this case. The Commission's decision to deny recovery of 25% of PEPCO's DSM costs rested solely on the ground that PEPCO had not shown that its programs were prudently managed. See Order No. 10387 at 163-68; Order No. 10423 at 14.
[7] The least-cost plan proceeding. See infra note 11.
[8] PEPCO contends the Commission's findings that significant differences existed among budgeted, projected, and actual costs were based on a misinterpretation of PEPCO Exhibit (L)-2 summarizing these costs. After reviewing the record, however, we are satisfied that the information in the PEPCO Exhibits considered by the Commission, in particular Exhibits (L)-2 and (3D)-6, support the Commission's conclusion that actual costs were higher than budgeted costs and significantly higher than projected costs. More specifically, Exhibit (3D)-6 shows that actual expenditures for DSM programs during the 10 months ending October 1993 totaled $14,316,000 whereas Exhibit (L)-2 reveals that budgeted costs for all of 1993 were $14,703,000 and projected costs for 1993 were $12,269,000.
[9] Pursuant to D.C.Code § 43-402 (1990), the Commission is obligated to ensure that utility rates are "reasonable, just, and non-discriminatory." The "prudent management" standard is therefore a means of determining which costs are reasonable and ensuring that only those costs are passed on to customers.
[10] PEPCO contends that there is an "unexplained inconsistency" between the Commission's decision, on reconsideration, to allow recovery of all PEPCO's DSM administrative and planning costs and its affirmance, on reconsideration, of the original decision to disallow 25% of the company's DSM program costs. There is no such inconsistency. In its application for reconsideration, PEPCO provided the Commission with information, explaining its administrative and planning costs, which had not been provided in the original proceedings. See Order No. 10423 at 21-22. In contrast, PEPCO's application for reconsideration failed to address the deficiencies in PEPCO's evidence which had led the Commission to disallow 25% of PEPCO's DSM program costs in its first order. See Order No. 10423 at 11-16.
[11] In Potomac Elec. Power Co., Formal Case No. 917, Order No. 10155, 140 Pub.Util.Rep. (PUR 4th) 25 (1993), the Commission approved PEPCO's "DSM program strategy, integrated least-cost plan and four-year action plan," Order No. 10387 at 165, but made very clear at the time that this general approval of PEPCO's DSM strategy did not constitute approval of PEPCO's specific DSM costs for purposes of cost recovery:

One of OPC's [Office of Peoples Counsel's] main concerns is that approval of the four-year action plan also constitutes approval of the costs necessary to carry out the plan. We note, however, that the Commission's approval of PEPCO's four-year action plan, while [it] is an acceptance of the elements of the plan, does not constitute approval of the projected costs for purposes of cost recovery. Rather, The Commission's approval goes to the prudence of pursuing the elements of the plan and the need for those elements. Nevertheless, the programs... must be prudently managed and the costs prudently incurred.
Order No. 10387 at 165 (quoting Order No. 10155 at 264). The Commission has noted that its approval of PEPCO's overall DSM strategy in Formal Case No. 917 is one of the reasons for allowing a 75% cost recovery in the proceeding under review here. See supra at [137-138] (quoting Order No. 10387 at 165-66). However, the explicit notice given to PEPCO that least-cost plan approval did not constitute approval for recovery of specific DSM program costs vitiates any possible argument that the Commission's subsequent decision to deny recovery of 25% of PEPCO's DSM costs was arbitrary simply because the Commission had previously approved PEPCO's overall DSM strategy.
[12] "PEPCO merely submitted data showing that it operated DSM programs at some level without submitting data to show that its programs were operated in a manner that maximized DSM resources for dollars spent. Hence PEPCO's description of the volume of data the company provided is simply misplaced." Order No. 10423 at 11.
[13] At oral argument before this court PEPCO cited the testimony of PEPCO witnesses Grantley, Mayberry, Plunkett, and Obeiter, as well as several others, as examples showing that PEPCO had adduced proof of prudent management. Our review of these portions of the record suggests that this testimony is largely descriptive in nature and does not address the deficiencies in PEPCO's proof that the Commission has identified.
[14] In Washington Gas Light Co. v. Public Serv. Comm'n, 450 A.2d 1187 (D.C.1982), we noted that the rationale of the West Ohio Gas presumptionthat utility managers have no incentive to make ineffective or wasteful expenditureswas inapplicable where "a utility is charged with making advertising expenditures for illegitimate purposes, or for valid purposes that accrue to the benefit of shareholders rather than ratepayers." Id. at 1227 n. 55. In this case, PEPCO's DSM programs can hardly be considered an illegitimate purpose where the Commission ordered PEPCO to implement these programs and approved the cost-effectiveness of PEPCO's overall DSM program strategy in two least-cost planning reviews. See Potomac Elec. Power Co., Formal Case No. 917, Order No. 10155, 140 Pub.Util.Rep. (PUR 4th) 25 (1993); Potomac Elec. Power Co., Formal Case No. 834, Order No. 9714, 12 D.C.P.S.C. 241 (1991). Furthermore, the Commission did not find that PEPCO's DSM programs are inimical to the interests of ratepayers, but only that the costs of specific DSM programs were not justified. Indeed, one of the purposes of DSM programs is to save money for ratepayers in the long run. See Transphase Sys., Inc. v. Southern Cal. Edison Co., 839 F.Supp. 711, 713 (C.D.Cal. 1993) (DSM programs "benefit ratepayers by offsetting the need of utilities to build power plants or buy additional electric capacity from independent power producers at a higher unit cost than the ratepayers would need to pay for the DSM system."). Finally, we also noted in Washington Gas Light Co. that "there is no justification for extending West Ohio Gas to cover the situation where an advertising expenditure is alleged to be in a non-allowable category and not merely excessive...." 450 A.2d at 1227 n. 55. Here, what was contested was not the category of the expenditures but the prudence of the costs incurred.
[15] In Green v. D.C. Dep't of Employment Servs., 499 A.2d 870 (D.C.1985), we noted that "under the so-called `bursting bubble' theory of presumptions, once the opponent offers evidence against the fact presumed, the presumption vanishes.... In other words, the presumption places on the opponent only the burden of production of evidence. This theory had been described as being `the prevailing view, to which jurists preponderantly have subscribed.'" Id. at 874 (citations omitted). This kind of presumption, therefore, differs from a presumption that places the burden of persuasion on the party against whom it operates. See id. (regulatory presumption that unemployment compensation claimant's separation from work was involuntary is rebuttable, but burden of persuasion remains on employer).
[16] "We have interpreted the phrase `burden of proof' [in D.C.Code 1-1509(b)] to mean burden of persuasion." Id. at 837 n. 5 (citing Washington Pub. Interest Org., 393 A.2d at 77).
[17] The placement of the burden of persuasion on the utility reflects the practice under federal law as well. See 16 U.S.C. § 824d(e) (1988) ("At any hearing involving a rate or charge sought to be increased, the burden of proof to show that the increased rate or charge is just and reasonable shall be upon the public utility."). See also Note, Advertising by Public Utilities as an Allowable Expense for Ratemaking: Assault on Management Prerogative, 13 VAL.U.L.REV. 87, 119 (1978) ("As a general principle, the utility has the initial burden of proof when it seeks to justify a rate increase.").
[18] There is doubt about the continuing vitality of the West Ohio Gas presumption even as applied to advertising costs. See Note, Advertising by Public Utilities, 13 VAL.U.L.REV. at 119-22. In any event, we need not decide whether it applies in the context of DSM costs.
[19] The $3,189 dollar figure related to rebates paid by PEPCO for air conditioners and heat pumps with efficiency levels "at or below the federal minimum efficiency standards." The $4,796 figure represented rebates paid to customers for switching from natural gas to electricity.
[20] The Public Service Commission is required by statute to ensure that all utility rates are "reasonable, just, and non-discriminatory." D.C.Code § 43-402. As the Commission noted, its responsibility to ensure the reasonableness of a rate increase is particularly important where, as here, the cost sought to be recovered represents a projected, one-time, out of test period adjustment. Order No. 10423 at 37.
[21] The benefit costs which PEPCO sought to recover were associated with the following programs: (1) medical plans; (2) dental plan; (3) retirement plan; (4) life insurance; (5) long term disability plans; (6) savings plans; (7) tuition aid; (8) miscellaneous fees.
[22] PEPCO contends that the Commission's disallowance of its employee benefit costs was arbitrary for an additional reason: the utility had provided as much supporting evidence in this case as in its most recent previous rate case, Formal Case No. 912, Order No. 10044, 13 D.C.P.S.C. 512, 1992 WL 554363 (1992), in which the Commission had found PEPCO's explanation sufficient. This argument fails, however, because, as the Commission points out, PEPCO sought a "significant and dramatic" increase in its 1994 employee benefit costs. Order No. 10423 at 37. The amount of evidence necessary to justify the previous year's costs was therefore not necessarily sufficient to justify the present request. See id. at 40 ("[G]iven the significant cost increases from 1993 to 1994 of benefit employee [sic] costs, we reject PEPCO's argument that its evidence in this proceeding was similar to that submitted in Formal Case No. 912.").