OFFICE OF the PEOPLE'S COUNSEL OF the DISTRICT OF COLUMBIA, Petitioner,

v.

PUBLIC SERVICE COMMISSION OF the DISTRICT OF COLUMBIA, Respondent,

and

Potomac Electric Power Company, Intervenor.

No. 04–AA–07.

District of Columbia Court of Appeals.

Argued Sept. 15, 2004.
Decided Jan. 5, 2006.

Jennifer L. Emma, with whom Sandra Mattavous–Frye and Elizabeth A. Noel, Washington, DC, were on the brief, for petitioner.

Kimberly Lincoln–Stewart, with whom Richard Beverly, was on the brief, for respondent.

Nicholas S. Penn, with whom Nicole C. Mason, Washington, DC, Kirk J. Emge, Wilmington, DE and Paul H. Harrington, Washington, DC, were on the brief, for intervenor.

Before WASHINGTON, Chief Judge,[*] FARRELL and RUIZ, Associate Judges.

WASHINGTON, Chief Judge:

The Office of People's Counsel ("OPC") is petitioning for review of an order of the Public Service Commission of the District of Columbia permitting Potomac Electric Power Company ("PEPCO") to use new solid-state meters in providing service to residential and commercial customers within the District. OPC argues that the Public Service Commission unlawfully permitted PEPCO to alter a condition of service by approving PEPCO's application for new meters without providing the public with an opportunity to be heard. We disagree. PEPCO's request to use new meters, and the Public Service Commission's subsequent allowance, were done pursuant to properly enacted regulations which do not require notice and comment procedures. Thus, we affirm the order of the Public Service Commission.

## I.

The Public Service Commission of the District of Columbia ("Public Service Commission" or "Commission") is an independent agency established by Congress in 1913 to regulate the gas, electric, and telephone companies operating within the District. The Potomac Electric Power Company ("PEPCO"), a provider of electricity within the District, is one such utility regu-

---

[*] Chief Judge Washington was an Associate Judge of the court at the time this case was argued. His status changed to Chief Judge on August 6, 2005.

lated by the Public Service Commission. In order to monitor electricity usage for billing purposes, PEPCO utilizes electric meters installed on the properties of residential and commercial customers. On October 15, 2002, PEPCO submitted two letters requesting expedited approval from the Commission to begin using five new solid-state electric meters to monitor electricity usage of its residential and commercial customers.[1] The new meters would replace older, electro-mechanical meters previously used by PEPCO's residential and commercial accounts.

On November 18, 2002, PEPCO, after correcting certain errors in the previous submission, filed its request for approval of the new solid-state meters, and on November 26, 2002, the Commission approved PEPCO's use of the new solid-state meters for both residential and commercial accounts. The Commission's approval was based upon a review of meter tests performed by the manufacturers and PEPCO itself. There is no dispute that both tests were conducted in accordance with appropriate standards. The Commission concluded that the test results verified that the new meters conformed to the American National Code for Electricity Metering ("ANCEM") specifications.

On December 23, 2002, the Office of People's Counsel ("OPC")—an independent agency of the D.C. government that advocates on behalf of consumers of electricity, gas, and telephone services in the District—filed a motion requesting that the Commission rescind or reconsider its November 26, 2002 approval letters. In its motion, OPC argued that the meter applications should be subject to public notice and comment procedures. Order Number ("No.")12737 denied OPC's De-

cember 23rd motion. The Commission also dismissed as moot OPC's alternative request for a hearing. The Commission ruled that the use of the new meters did not constitute a "change in the condition of service" within the meaning of D.C.Code § 34–909(a) (2001), and, therefore, the applications were not subject to the notice and comment requirements of that provision.

OPC then sought reconsideration of Order No. 12737. On November 13, 2003, the Commission denied this request through Order No. 12989. The Commission also stated that the new meters would reduce rates and enhance competition, but noted that this was dicta and not the basis of its decision.

On January 17, 2004, OPC filed this petition seeking review of Order Nos. 12737 and 12989.

## II.

■ This court has "jurisdiction to hear and determine any appeal from an order or decision of the [Public Service] Commission." D.C.Code § 43–905(a) (2001); *see also Potomac Electric Power Co. v. Public Serv. Comm'n*, 661 A.2d 131, 134 (D.C. 1995). The scope of our review of a utility commission order is "limited to questions of law, including constitutional questions; and findings of fact by the Commission shall be conclusive unless it shall appear that such findings are unreasonable, arbitrary, or capricious." D.C.Code § 34–606 (2001). Moreover, we must affirm the Commission's order if it was based upon substantial evidence. *See Watergate East, Inc. v. Public Serv. Comm'n.*, 662 A.2d 881, 886 (D.C.1995); *Potomac Electric*

---

1. The five new meters were: The Schlumberger "Centron" and the Siemens "Altimus" solid-state meters for residential accounts within the District; and the ABB "Alphaplus 3," Schlumberger "Sentinel," and the General Electric "KV2" solid-state meters for commercial accounts within the District.

*Power Co. v. Public Serv. Comm'n*, 402 A.2d 14, 17 (D.C.1979).

▮▮▮ To insure that judicial review can be meaningful, we also impose an independent burden on the Commission to fully and clearly explain its orders. *Potomac Electric Power Co., supra*, 661 A.2d at 135. The burden then shifts to the petitioner challenging the Commission's order to clearly and convincingly demonstrate that the Commission's decision was unreasonable. *See Watergate East, supra*, 662 A.2d at 886; *see also Potomac Electric Power Co., supra*, 661 A.2d at 135 n. 4. We will affirm an agency's decision if we are satisfied that the agency engaged in reasonable analysis in coming to its decision. *Watergate East Inc. v. Public Serv. Comm'n*, 665 A.2d 943, 947 (D.C.1995).

▮▮▮ Finally, an agency's interpretation of a statute is controlling " 'unless it is plainly erroneous or inconsistent with the statute.' " *Capitol Hill Hosp. v. District of Columbia Dept. of Employment Servs.*, 726 A.2d 682, 684 (D.C.1999) (quoting *District of Columbia v. Davis*, 685 A.2d 389, 393 (D.C.1996)). This court will "defer to an agency's construction of the statute it is charged with administering as long as that construction enhances the general purposes and policies underlying the statute." *Office of the People's Counsel v. Public Serv. Comm'n*, 572 A.2d 410, 413 (D.C. 1990) (citations omitted).

In pertinent part, D.C.Code § 34–303(c) authorizes the Commission to "appoint inspectors of electric meters ... to inspect, examine, and ascertain the accuracy of any and all electric meters used *or intended to be used* for measuring and ascertaining the quantity of electric current furnished" to users of the service. (Emphasis added). Section 34–303(c) also requires the Commission to "ascertain the accuracy of all apparatus used for testing and proving the accuracy of electric meters." Furthermore, subsection (c) specifically requires

the Commission to approve electric meters prior to use by the utility company. D.C.Code § 34–303(c). Subsection (f) of 34–303 grants the Commission the authority to " prescribe such rules and regulations to carry into effect the provisions of this section as it may deem necessary ...." D.C.Code § 34–303(f) (2001).

This court has held that the Commission may act pursuant to abbreviated or streamlined procedure in certain circumstances. *See Chesapeake & Potomac Tel. Co. v. Public Serv. Comm'n*, 378 A.2d 1085, 1091 (D.C.1977). Such procedures are appropriate, for·example, where the utility's proposal will have a minimal effect on its financial operation and is not of material significance from a regulatory standpoint. *See Office of People's Counsel v. Public Serv. Comm'n*, 571 A.2d 206 (D.C.1990) (allowing an abbreviated comment procedure that eliminates individualized review of "individual case basis" tariff filings when the changes in rates are made pursuant to a properly adopted cost manual designed to guide the utility's rate changes); *Office of People's Counsel v. Public Serv. Comm'n*, 462 A.2d 1105, 1113–14 (D.C.1983) (holding that the final stage of a ratemaking proceeding—the tariff compliance filing—need only require a technical review of the new schedule, as opposed to an adjudication, because such a technical procedure between the Commission and the utility is a mere "administrative detail"); *Chesapeake & Potomac Tel. Co., supra*, 378 A.2d at 1091 (D.C.1977) (approving streamlined procedure when there is a "typical 'new service' filing" by the utility to which no reasonable objection is made, and is acceptable to the Commission); *Bird v. Chesapeake & Potomac Tel. Co.*, 185 A.2d 917, 918 (D.C.1962) (holding that public notice and comment procedures were not necessary when the Commission is "called upon to approve a proposed rule or regulation which only indirectly and to a

minor degree affects the financial operation of the utility").

The Commission first promulgated regulations intending to streamline its meter related operations in 1916.[2] Order No. 139 stated that the electric utilities themselves should test all meters for accuracy as it was not practicable for the Commission's Electrical Inspection Bureau to do so. *See* Comm'n Order No. 139 (January 30, 1915); *see also* 1915 Annual Report of the Public Utilities Commission of the District of Columbia at 29 (1916). Order No. 139, however, did not specify standards to be used in the approval of new meters. The Commission addressed that issue on December 27, 1916, when, after providing for a notice and comment period, it issued Order No. 197. This order established the requirements for the approval of new meters in the District. Fifty-one years later, the Commission revisited the issue of meter approval. After providing the requisite notice and comment period, the Commission on February 17, 1967 issued Order No. 5120. Order No. 5120 explicitly superceded Order No. 197 and adopted "the American Standard Code for Electricity Metering, Fifth Edition (ASA C–12)"— now ANCEM—as the standard in the District of Columbia against which approval of all new meters would be measured. *See In the Matter of Rules and Regulations for Electric Service and Metering of Electrical Energy in the District of Columbia,* Comm'n Order No. 5120 at §§ 1, 3 (February 17, 1967).

There is nothing in the record to suggest, and OPC does not appear to contend, that Order No. 5120 is anything but a properly enacted regulation that states the procedure by which new meters are to be approved. The approval method outlined in Order No. 5120 is the kind of streamlined procedure recognized in *Chesapeake & Potomac Tel. Co. v. Public Serv. Comm'n* because the Commission's review and approval of electric meters is purely technical and does not affect either the financial operations or the regulatory processes of the utility in question. In adopting the ANCEM standards as the District's rules and regulations applicable to electric metering, the Commission's clear intent was to create a smoother and more efficient process for approving electric meters. By adopting ANCEM standards, the Commission made clear that it viewed its role in approving new meters to be a purely technical review of the equipment for accuracy and functionality alone.[3]

On October 15, 2002, PEPCO submitted two letters and the appropriate supporting material to the Commission requesting approval of the new meters. The Commission, after reviewing the submitted materials and finding that the proposed meters complied with the ANCEM standards, issued a letter approving use of the meters. The approval was done in a manner compliant with duly enacted rules and regulations of the Public Service Commission and therefore, neither a public hear-

---

**2.** The pertinent language currently codified at D.C.Code § 34–303(c) has been included in the Commission's organic statute since 1913. *See An Act: Making appropriations to provide for the government of the District of Columbia for the fiscal year ending June thirtieth, nineteen hundred and fourteen, and for other purposes,* Pub.L. No. 62–435, § 8, ¶ 57, 37 Stat. 987 (1913).

**3.** It is our understanding, however, that any question as to cost recovery or rate increases resulting from the use of the new meters would be the proper subject of notice and comment proceedings, and a hearing. It is also our understanding that the approval of meters generally does not prevent users with disabilities from obtaining more appropriate meters. Further, in the event that the meters did in fact malfunction, consumers could request that the Commission inspect and test them. *See* D.C.Code § 34–303(e) (2001).

ing nor a public comment period were required.[4]

Arguing that PEPCO's usage of the new solid-state meters is a change in condition of service, OPC asserts that notice and comment procedures must be followed in order to allow introduction and use of the meters. *See* D.C.Code § 34–909(a) (stating that public notice and opportunity for comment must be allowed in changes to conditions of service); *see also* D.C.Code § 34–908 (requiring that "no order affecting rates, tolls, charges, schedules, regulations, or act complained of shall be entered by the Commission without a formal hearing"). OPC's argument is not persuasive. Section 34–303 is the controlling legislative mechanism by which meters are assessed and approved. Specifically, Order No. 5120, a regulation properly enacted pursuant to mandatory notice and comment procedures, is a streamlined means by which the Commission can comply with section 34–303.[5]

The only issue before the Commission when it receives an application from a utility requesting approval to use new electric meters is the accuracy of the proposed meters. OPC does not challenge the accuracy of the proposed meters nor does it question the ANCEM standards used to assess the precision of those meters. Based on our review of the legislative history governing the approval of electric meters in the District of Columbia and because the regulations developed in this area were promulgated in accordance with applicable law, we are satisfied that the Commission's process for approving electric meters does not require public notice and comment.

For the foregoing reasons, the agency's orders are

*Affirmed.*

4. Although *public* comment need not have been sought, the present case involved a formal application before the Commission. OPC, as a statutory party to all proceedings, should have been given formal notice by the Commission. OPC, however, concedes that it is not challenging the accuracy of the meters. Therefore we hold that failure to give formal notice was harmless.

5. We accordingly do not decide whether PEP-CO's switch to the new meters would constitute a change in condition of service under § 34–909(a).